IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **FOXFIELD VILLA ASSOCIATES, LLC,** **et al.,** | ) ) ) ) |
| **Plaintiffs,** | ) ) |
| v. | ) ) |
| **ROBERT D. REGNIER, et al.,** | ) ) ) ) |
| **Defendants.** | ) ) |

Case No. 12-2528-CM

## MEMORANDUM AND ORDER

This matter is before the court on defendant Bank of Blue Valley ("BOBV")'s motion to dismiss or, in the alternative, to stay the present proceedings against all parties under the *Colorado River* doctrine (Doc. 21).[1] Plaintiffs filed suit against BOBV, BOBV's Board of Directors, BOBV's holding company Blue Valley Ban Corp. ("Ban Corp."), and members of Ban Corp.'s Board of Directors under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and Kansas common law. For the reasons stated below, BOBV's motion is granted in part and denied in part and a stay is entered as to all parties.

**I.     Background**

On September 1, 2011, plaintiffs filed a petition against BOBV in the District Court of Johnson County, Kansas, ("state action" or "state-court action") related to a loan transaction that took place on March 24, 2008. BOBV was the sole defendant in the state action. Plaintiffs filed a motion for leave

---

[1]    BOBV titles its motion as "Defendant Bank of Blue Valley's Motion to Dismiss." However, the motion also requests the alternative relief of a stay as to all defendants. For clarity, the court considers the motion as one to dismiss, or, in the alternative, to stay.

-1-

to file an amended petition on May 17, 2012 and the court set a hearing date on the motion for Monday, August 13, 2012.  Importantly, according to BOBV, plaintiffs' proposed first amended petition originally added all of the parties and claims presently before this court, including the RICO claim.  Plaintiffs did not follow through with their proposed amendment including these claims and parties, however.  Instead, plaintiffs filed the instant action on Friday, August 10, 2012, and then revised their motion for leave to amend, removing the additional claims and defendants.  Plaintiffs' revised amended state-court petition alleged twenty-three counts against BOBV for breach of contract, promissory estoppel, equitable estoppel, declaratory judgment, unclean hands, fraudulent nondisclosure, fraud, breach of the duty of good faith and fair dealing, breach of fiduciary duty, tortious interference with contract and business expectancy, negligent and malicious breach of contract, unjust enrichment, rescission, equitable subordination, negligent and/or reckless failure to supervise, and civil conspiracy.

BOBV filed a counterclaim against plaintiffs in the state action to collect on the promissory note and personal guaranties executed by the plaintiffs, and to foreclose on the real property securing the transaction at issue.  On August 10, 2012, nearly a year after filing the state-court suit, the same plaintiffs filed the instant action against BOBV, BOBV's Board of Directors, Ban Corp., and Ban Corp.'s Board of Directors.  Both the state and federal actions are based on the same alleged fraudulent statements or misrepresentations by defendants in connection with the March 2008 loan transaction.  The instant action contains six counts that are similar to the claims brought in the state court case: fraudulent nondisclosure, fraud, breach of fiduciary duty, tortious interference, failure to supervise, and civil conspiracy.  In addition, plaintiffs brought one federal claim under RICO.

Plaintiffs and BOBV hold differing views on the motives behind plaintiffs' decision to withdraw and revise their motion for leave to amend and instead file the instant action in this court.

Plaintiffs state that they elected to assert the RICO claim in federal court because it arises under federal statute, and because this court is supposedly more experienced in handling such a claim.  By contrast, BOBV argues that plaintiffs' decision to bring the lawsuit to a second front was a strategic litigation tactic designed to make the defense of this litigation more cumbersome for BOBV.  The court expresses no opinion on the motives behind plaintiffs' decision; however, the court finds it important to consider this background in obtaining a complete picture of the case history.

Assuming plaintiff's factual allegations as true, Ban Corp. is the holding company for BOBV, and BOBV is a wholly-owned subsidiary of Ban Corp.  Defendant Robert Regnier ("Regnier") is the President, Chief Executive Officer ("CEO") and Chairman of the Board of Directors of Ban. Corp.  Defendant Regnier is also the CEO and Chairman of the Board of Directors of BOBV.  Defendant Donald H. Alexander ("Alexander") was a director of BOBV and Ban Corp.  Defendants Harvey S. Bodker ("Bodker"), Suzanne E. Dotson ("Dotson"), Charles S. Hunter ("Hunter"), and Richard L. Bond ("Bond") were all directors of BOBV.  Defendants Michael J. Brown ("Brown"), Robert D. Taylor ("Taylor"), Thomas A. McDonnell ("McDonnell"), and Anne D. St. Peter ("St. Peter") were all directors of Ban Corp.

**II.    Legal Standard**

As a preliminary matter, the court will briefly address plaintiffs' argument that BOBV's motion is not an approved pre-answer motion.  Plaintiffs are correct that a motion requesting dismissal or a stay under the *Colorado River* doctrine does not fall under any enumerated provision of Federal Rule of Civil Procedure 12(b).  However, the court exercises its discretion to consider additional pre-answer motions, including a motion to stay or dismiss under the *Colorado River* doctrine.  *See Intravascular Research Ltd. v. Endosonics Corp.*, 994 F. Supp. 564, 567 n.3 (D. Del. Feb. 13, 1998) (citing *Int'l Ass'n of Entrepreneurs of Am. v. Angoff*, 58 F.3d 1266, 1271 (8th Cir. 1995)); *see also Brillhart v.*

*Excess Ins. Co. of Am.*, 316 U.S. 491, 494–96 (1942) (noting that district courts have discretion to recognize additional pre-answer motions, including motions to stay a federal action when a parallel state action is pending).

Under the *Colorado River* doctrine, where a federal court would otherwise have concurrent jurisdiction with a state court, the federal court may "dismiss or stay a federal action in deference to pending parallel state court proceedings." *Fox v. Maulding*, 16 F.3d 1079, 1080 (10th Cir. 1994) ("*Fox I*") (citing *Colorado River*, 424 U.S. 800, 817 (1976)).  The federal court has discretion in such a situation to stay or dismiss the federal suit for reasons of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id*. at 1081 (quoting *Colorado River*, 424 U.S. at 817–18) (quotation and quotation marks omitted).  Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them" and thus application of the doctrine is appropriate only in "exceptional" circumstances. *Id*. (quoting *Colorado River*, 424 U.S. at 817–18).

Certain factors under the *Colorado River* doctrine guide the federal court in determining whether to dismiss or stay a federal action that parallels a state action.  First, the federal court must analyze whether the state court suit and the federal suit are in fact "parallel." *Reality Tech., Inc. v. Countertrade Prods., Inc.*, No. 10-cv-01791-PAB-KLM, 2011 WL 2134409, at *2 (D. Colo. May 27, 2011).   If this test is met, the court may then apply the nonexhaustive factors delineated in *Colorado River*, 424 U.S. at 818, and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 18 n.20, 23, 26–28 (1983). *See id*.

The Tenth Circuit has stated that—should the court determine that deferral to the state proceeding is appropriate—the court should enter a stay, rather than dismiss the case. *Fox I*, 16 F.3d at 1083 ("We think the better practice is to stay the federal action pending the outcome of the state

proceedings.") (citations omitted).  "In the event the state proceedings do not resolve all the federal claims, a stay preserves an available federal forum in which to litigate the remaining claims, without plaintiff having to file a new federal action." *Id*.   If the state court proceeding resolves all of the federal claims, dismissal of the federal case may then be appropriate. *Reality Tech., Inc.*, 2011 WL 2134409, at *2.

**III.    Discussion**

**A.    Whether the Two Actions Are Parallel**

The first step in determining whether deferral is appropriate is to determine whether the federal and state actions are indeed parallel. *Fox I*, 16 F.3d at 1081.  "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums."  *Id*. (quotation and quotation marks omitted).  In making this determination, the court looks at the state case at it actually exists— and does not consider how the state proceedings could have been brought in theory.  *Id.*  Finally, plaintiffs may not avoid application of the *Colorado River* doctrine by including additional defendants or claims in the federal suit.  *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 180 F. Supp. 2d 1235, 1240 (D. Kan. 2001).[2]

Here, both parties agree that the state and federal proceedings are parallel.  The plaintiffs in both cases are the same.  In the state case, BOBV is the only defendant.  In the federal case, additional defendants include BOBV's holding company, Ban Corp., and members of the Board of Directors for both Ban Corp. and BOBV.  Although the parties in both cases are not identical, they are substantially the same and the claims lodged against the defendants in both cases are based on the same factual bases. In fact, the first amended state-court petition identifies each of the additional federal defendants

---

[2]    Both parties cite to this case in support of their respective positions.  The court acknowledges that there are both similarities and differences between this case and the instant action.  However, the court does not agree that this case compels a decision in favor of either party or that it supports either party's position in full.  The specific facts and exceptional circumstances of the instant action require the conclusion set forth herein.

-5-

in the "Parties, Jurisdiction and Venue" portion of the petition and the additional federal defendants are mentioned in the factual allegations in both the state and federal cases. Plaintiffs cannot avoid application of the *Colorado River* doctrine simply by adding additional parties in the federal suit—especially when the additional parties are so closely affiliated with the defendant present in both cases. *See id*.

In addition, both cases involve substantially the same issues. The same facts and allegations involved in the state case will be addressed in the instant case—both cases center on the issue of whether fraudulent statements or misrepresentations were made in connection with the March 2008 loan transaction with plaintiffs. The only notable difference is the addition of the RICO claim in the instant action; however, the RICO claim is based on many of the same facts at issue in the state action. *See id*. (finding that the addition of a RICO claim in the federal action did not prevent the determination that the two actions were parallel because the RICO claim was based on many of the same facts as the claims in the state case). The substantial overlap of parties and issues in both the state and federal case indicates that the two actions are parallel and the threshold test has been met.

### B.     *Colorado River* Factors

The Supreme Court has outlined a nonexhaustive list of factors for courts to consider in determining whether "exceptional circumstances" exist to warrant deference to parallel state proceedings: (1) whether either court has assumed jurisdiction over property; (2) whether the federal forum is inconvenient; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the courts obtained jurisdiction and the progress of the two cases; (5) which forum's substantive law governs the merits of the litigation; (6) the adequacy of the state forum to protect the parties' rights; and (7) the vexatious or reactive nature of either action. *See Colorado River*, 424 U.S. at 818; *Moses H. Cone*, 460 U.S. at 18 n.20, 23, 26–28. Other courts have also considered whether the party

opposing abstention has engaged in "impermissible forum-shopping." *Fox I*, 16 F.3d at 1082 (citing *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370–71 (9th Cir. 1990)).

The court should apply the factors in a pragmatic, flexible manner. *Health Care & Ret. Corp. of Am. v. Heartland Home Care, Inc.*, 324 F. Supp. 2d 1202, 1205 (D. Kan. 2004) (citation omitted). "In applying the test, no one factor is determinative and the weight to be given any one factor may vary from case to case." *Id*. (citing *Colorado River*, 424 U.S. at 818–19). The balance should be "heavily weighted in favor of the exercise of jurisdiction." *Fox I*, 16 F.3d at 1082 (quoting *Moses H. Cone*, 460 U.S. at 16). Dismissal is warranted only under the "clearest of justifications." *Colorado River*, 424 U.S. at 819. Finally, any doubt in the application and balancing of the factors "should be resolved in favor of exercising federal jurisdiction." *Fox I*, 16 F.3d at 1082.

### 1.     Whether Either Court Has Assumed Jurisdiction over Property

In the state court case, BOBV counterclaimed to foreclose the real estate securing money BOBV loaned to plaintiff Foxfield Villa. As both parties agree, the state court has exercised jurisdiction over this real property. In *Colorado River*, the Court noted that the concern with this factor "is with avoiding the generation of additional litigation through permitting inconsistent dispositions of property." 424 U.S. at 819.

Plaintiffs cite K.S.A. § 60-213(a) and Federal Rule of Civil Procedure 13(a) to support their contention that BOBV is not required to reassert the state-court counterclaims in this lawsuit, stating that because they have already been asserted in the state action, they are not compulsory here. Under Rule 13(a), any claims which a party has against the opposing party and which arise out of the transaction or occurrence that is the subject matter of the opposing party's claim must be pleaded as counterclaims in a federal action. However, an exception exists if, when the action was commenced, the claim was the subject of another pending action. Fed. R. Civ. P. 13(a)(2)(A).

Although this exception allows the party to escape the waiver rule, it does not mean that the party is prohibited from pleading the counterclaim if it is the subject of another pending action. *See Union Paving Co. v. Downer Corp.*, 276 F.2d 468, 470–71 (11th Cir. 1960); 3 Moore's Federal Practice (3d ed.) 13.16(1) (noting that although a party need not plead a counterclaim that would be compulsory but for the fact that it was the subject of another pending lawsuit, he may elect to do so under Rule 13 if he so desires). BOBV has stated that if it is required to defend this action, it intends to raise the same affirmative defenses and counterclaims as it raised in the state court action. Thus, this factor weighs in favor of staying the case to avoid additional litigation and inconsistent dispositions of the property at issue.

### 2.     Whether the Federal Forum is Inconvenient

If the federal forum is less convenient than the state forum, this factor balances in favor of staying or dismissing the case. *Health Care*, 324 F. Supp. 2d at 1205–06 (citations omitted). BOBV does not argue that the location of the federal forum is less convenient than the state forum. Instead, it argues that the duplicity of the claims asserted against it—and the potential requirement for BOBV to "litigate the same issues with the same Plaintiffs on two fronts"—is inconvenient. (Doc. 22 at 9.) Defendant cites no authority for its argument that duplicity of claims can lead to a determination that the federal forum is inconvenient. The duplication of issues and parties is already addressed in the analysis of whether the state and federal actions are parallel. By contrast, this factor focuses on the physical proximity of the federal forum to the parties, evidence, and witnesses. *See Health Care*, 324 F. Supp. 2d at 1206 (citation omitted). Here, both the state action and the instant action are situated in the same Kansas City metropolitan area. Based on the close proximity of the two actions, the court does not find that the federal forum is less convenient than the state forum. This factor is neutral.

### 3. Avoidance of Piecemeal Litigation

"The avoidance of piecemeal litigation is an important rationale behind the Colorado River doctrine." *Ins. Fin. Corp. v. Evolution, Inc.*, No. 00-2386-KHV, 2000 WL 33314113, at *2 (D. Kan. Nov. 28, 2000). Here, duplication of proceedings is almost certain to occur, as the issues being litigated in state court mirror those before the court in this action, and both cases rely on the same factual and legal assertions. Granted, plaintiffs have added new defendants and a RICO claim to this litigation; nonetheless, the issues and factual circumstances in both cases are nearly identical. Duplication of proceedings would waste the resources of both the parties and the court. *Id.* (citing *Joseph Stowers Painting, Inc.v. A. Zahner Co.*, No. 99-2391-KHV, 2000 WL 210219 at *2 (D. Kan. Feb. 4, 2000)). Accordingly, this factor weighs in favor of staying this case.

### 4. The Order in Which the Courts Obtained Jurisdiction and Case Progression

Plaintiffs filed the state action on September 1, 2011, nearly one year before filing the instant action on August 10, 2012. However, a more persuasive consideration than which case was filed first is to examine the progress made in the two actions. *Moses H. Cone*, 460 U.S. at 21. Here, the state action has undoubtedly progressed further than the instant federal action. Based on representations made by the parties, in the state action, the parties are in the discovery process. The parties have produced documents and taken several depositions. In addition, discovery will close in February 2013. The parties have fully briefed several motions with the state court, including BOBV's motion to strike plaintiffs' jury demand and plaintiffs' motion for leave to amend their petition. Moreover, the state case is set for trial on July 29, 2013.

In contrast, discovery has not yet commenced in this action. On December 10, 2012, Magistrate Judge James P. O'Hara conducted a scheduling conference. In his scheduling order entered the same day (Doc. 33), Judge O'Hara noted that discovery in the similar state-court case will close

-9-

soon and that the state-court trial is scheduled to start in July 2013.  Further, Judge O'Hara stated that the upcoming state-court trial may have significant legal and/or practical ramifications on the instant case.  Citing the unique factual circumstances of this case, as well as Federal Rule of Civil Procedure 1, Judge O'Hara stayed all discovery in the federal action.  Finally, Judge O'Hara set a status conference for September 4, 2013, and asked the parties to submit an updated planning report by August 30, 2013.

Given that the state case was filed first, discovery will soon close in the state case, and trial is set to occur in the state case several months before the scheduled status conference in the federal case, this factor strongly favors a stay of the instant action.  *See Waddell & Reed Fin., Inc.*, 180 F. Supp. 2d at 1242 (finding fact that state case was filed nearly fifteen months before federal case and that state case was nearly ready for trial strongly favored a stay of the federal action).

### 5. Which Forum's Substantive Law Governs the Merits of the Litigation

The only federal claim asserted in this action is the RICO claim in Count VII.  Federal law will govern this claim.  The other claims are state-law tort claims to which the court will apply Kansas law.  It is well-established that state courts have concurrent jurisdiction to consider RICO claims.  *Tafflin v. Levitt*, 493 U.S. 455, 467 (1990).  However, because federal law will govern the RICO claim, this factor slightly favors denying a stay of the federal case.  *See Waddell & Reed Fin., Inc.*, 180 F. Supp. 2d at 1242 (finding same); *see also Moses H. Cone*, 460 U.S. at 25 (stating that "the presence of federal-law issues must always be a major consideration weighing against surrender"); *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) (finding that if the state and federal court have concurrent jurisdiction over a claim, this factor becomes less significant).

### 6.     The Adequacy of the State Forum to Protect the Parties' Rights

In *Moses H. Cone*, the Supreme Court noted that in dismissing or staying a case under the *Colorado River* doctrine, a court essentially determines that the parallel state-court litigation "will be an adequate vehicle for the complete and prompt resolution of the issues between the parties" and that "[i]f there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." 460 U.S. at 28.  Thus, a stay is only appropriate under the *Colorado River* doctrine if the court has "full confidence" that the state court litigation will dispose of the dispute in its entirety. *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988) (citing *Moses H. Cone*, 460 U.S. at 28).

To determine whether the state-court case can completely resolve the instant dispute, it is necessary to determine whether any claim in this case would remain after a final judgment in the state-court case.  A federal court must give to state court judgments "the same full faith and credit . . . as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."  28 U.S.C. § 1738.  Federal courts must determine what preclusive effect a state would give its own decision before they may determine what effect they should give to such decision in federal court. *Stifel, Nicolaus & Co. v. Woolsey & Co.*, 81 F.3d 1540, 1544 (10th Cir. 1996).

"Under the doctrine of res judicata, a final judgment by a court of competent jurisdiction on the merits of an action is conclusive, not only on all matters which were actually litigated, but also on all matters which could have been litigated by the parties or their privies in that action."  *O'Keefe v. Merrill Lynch & Co.*, 84 P.3d 613, 618 (Kan. Ct. App. 2004) (citation omitted).  Under Kansas law, res judicata applies when four elements are met: "(1) identity in the things sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of the persons for or against whom the claim is made."  *Id*.

#### a. Plaintiffs' RICO Claim Against BOBV

Plaintiffs contend that the state-court action will not bar their RICO claim against BOBV. Plaintiffs argue that although the third and fourth elements of res judicata are met, the first two elements are lacking and thus res judicata will not apply. The first two elements are (1) identity in the thing sued for and (2) identity of the cause of action. *Id*. Although plaintiffs claim that the causes of action raised in the state case are different from the RICO claim in the instant action, "Kansas law emphasizes that the claim or cause of action is defined in terms of the injury for which relief is demanded, that is to say, in terms of the *factual circumstances* of the controversy rather than the legal theory or remedial statute on which the suit is grounded." *Xiangyuan v. St. Francis Health Ctr.*, 215 F. App'x 717, 719 (10th Cir. 2007) (citations omitted).

It is true that plaintiffs raise a new legal theory in bringing a RICO claim. However, the RICO claim is based upon the same factual circumstances as the state-court action and plaintiffs could have brought the RICO claim in that case. *See id*. (finding same); *see also Tafflin*, 493 U.S. at 467 (holding that state courts have concurrent jurisdiction over civil RICO claims). Both the state and federal actions center on the issue of whether BOBV made fraudulent statements or misrepresentations in connection with the March 2008 loan transaction with plaintiffs.

Although the RICO claim does include allegations that plaintiffs made misrepresentations, non-representations, and engaged in bad faith conduct to defraud others in addition to plaintiffs, the underlying facts and misrepresentations are essentially identical. *See Health Care*, 324 F. Supp. 2d at 1208 (noting that "regardless of which statute party uses to proceed to tribunal, where [the] same facts, [the] same parties and [the] same issues have previously been litigated before [a] court of competent jurisdiction which renders judgment within its competency, [the] cause of action is barred") (citing *Carson v. Davidson*, 808 P.2d 1377, 1382 (Kan. 1991)).

Moreover, plaintiffs did—at one point—take steps toward bringing the RICO claim in state court. Plaintiffs' proposed first amended petition originally added all of the parties and claims presently before this court, including the RICO claim. Plaintiffs did not follow through with this course of action, however, and subsequently filed this action on August 10, 2012, and then revised their motion to amend to remove the claims against the additional defendants. The court finds it persuasive that, in circumstances like these where plaintiffs failed to include their federal claim in the parallel state-court action, "plaintiff[s] must at least attempt to litigate [the] federal claim in state court"). *Health Care*, 324 F. Supp. 2d at 1200 (citing *Fox v. Maulding*, 112 F.3d 453, 459 (10th Cir. 1997) ("*Fox II*")).

Plaintiffs' failure to bring the RICO claim in state court, in addition to the nearly identical allegations contained in both the state and federal actions, indicate that plaintiffs' RICO claim against BOBV will likely be barred by res judicata. However, the court does not make a conclusive finding at this time on this issue. Instead, the court merely notes that it is possible that res judicata will bar this claim. After evidence is put forth and a judgment is reached in the state-court case, the parties are free to dispute whether res judicata does, in fact, bar plaintiffs' RICO claim against BOBV.

### b.   Plaintiffs' Claims Against the Other Defendants

Although plaintiffs' RICO claim may be barred against BOBV, the issue remains whether a state-court judgment will resolve all claims in this case, including those against the other defendants. For the same reasons that the first two elements of res judicata—identity of the thing sued for and identity of the cause of action—are met as to BOBV, these elements are also met as to the other defendants. Whether the third and fourth elements are met remains at issue. "The third element of res judicata requires that the parties in both suits are the same or in privity with one another." *ORI, Inc. v. Lanewala*, 147 F. Supp. 2d 1069, 1083 (D. Kan. 2001) (citing *Wells v. Davis*, 603 P.2d 180, 183 (Kan.

1979)).  The closely-related fourth element "requires that the parties in both suits are litigating in their same capacities, or, when the actions involve parties in privity, that the party to the first action directly represented the interests of the party to the second action."  *Id.* (citation omitted).

Plaintiffs do not explicitly argue that the claims against defendant Ban Corp. would not be barred by a judgment in the state action; plaintiffs address only the individual defendants.  BOBV is a wholly-owned subsidiary of its holding company, Ban Corp.  Ban Corp. is identified in the state pleadings.  Further, plaintiffs' claims against Ban Corp. in this case have a factual basis nearly identical to that in the state case.  In addition, the two entities had in common some members of management: defendant Regnier served as the CEO and Chairman of the Board of Directors for both entities and as President of Ban. Corp., and defendant Alexander served as a director of both entities.  In this situation, as a holding company and its wholly-owned subsidiary, Ban Corp. and BOBV are likely in privity for the purposes of res judicata.  *See B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 327 F. Supp. 2d 1252, 1259 (D. Kan. 2004) (finding same regarding a parent-subsidiary relationship and noting support from other courts).  Thus, claims against Ban Corp. in this action would likely be barred by a judgment in the state action.  This is not a conclusive finding, however, and the parties are free to dispute this issue after resolution of the state-court action.

Privity must also be established as to the remaining defendants.  As a preliminary issue, the court notes that plaintiffs' complaint does not explicitly state whether plaintiffs' claims against these defendants are in their individual or official capacities.  In such a situation, the Tenth Circuit has instructed courts to look to "the substance of the pleadings and the course of the proceedings" to determine whether the defendants are being sued individually or in their official capacities.  *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993).  Plaintiffs use the phrase "individual defendants" to refer to the officers and directors of BOBV and Ban Corp.  A closer look at the allegations contained in the

pleadings, however, leads the court to conclude that any attempt made by plaintiffs to sue the defendants in their individual capacities is likely disingenuous. With the exception of defendant Regnier, the other defendants are referred to by name in the complaint only in the "Parties, Jurisdiction and Venue" section and again in Count V and Count VII of the complaint. In these counts, these defendants are collectively referred to either as members of the "Bank Board of Directors" or the "Blue Valley Ban Corp. Board of Directors." The allegations against these defendants appear to deal only with actions taken while acting on behalf of BOBV or Ban Corp. in their capacities as directors or "supervisors."

Defendant Regnier is mentioned more frequently than the other individual defendants throughout the complaint. Like the other defendants, it is not clear whether plaintiffs sue defendant Regnier in his individual or official capacity. This is a closer call. For example, the complaint contains an allegation that Regnier "personally stated" fraudulent representations. (*See, e.g.*, Doc. 1 at 47.) However, these statements still appear to have been made on behalf of BOBV.

In *Lowell Staats Mining Co. v. Philadelphia Electric Co.*, 878 F.2d 1271, 1277 (10th Cir. 1989), the court found that "[a] director's close relationship with the corporation will generally establish privity." But this is only true when the director is sued in his or her official capacity. *Boilermaker-Blacksmith Nat'l Pension Fund v. Gendron*, 67 F. Supp. 2d 1250, 1255 (D. Kan. 1999). As stated above, defendants Regnier and Alexander both served in various capacities with BOBV and Ban Corp. Defendants Bodker, Dotson, Hunter, Bond, Brown, and Taylor all served as directors of BOBV. Defendants McDonnell and St. Peter served as directors of Ban Corp.

As previously noted, although plaintiffs may have intended to sue these defendants in their individual capacities, they did not explicitly state this fact. A review of the pleadings and the proceedings indicates that the allegations against these defendants (except admittedly not as clearly as

to defendant Regnier) appear in reality to be made against them in their official capacities as President, CEO, directors, board members, and supervisors. *See O'Connor v. St. John's College*, 290 F. App'x 137, 140–41 (10th Cir. 2008) (finding that although the plaintiff alleged he was suing defendant in his individual capacity, the allegations related to defendant's official duties and the claim was thus in reality against defendant in his official capacity). As such, the claims in this case against these other defendants may be barred by a state-court judgment. Even if res judicata did not apply to these other defendants, "a stay preserves an available federal forum in which to litigate the remaining claims, without . . . plaintiff[s] having to file a new federal action." *Fox I*, 16 F.3d at 1083.

A careful analysis of this factor indicates the likelihood that the claims against all defendants may be barred by res judicata after resolution of the state-court proceeding. The court again makes it clear that it makes no conclusive finding and the parties are free to dispute the preclusive effect of any state-court judgment after disposition of that case. Because a judgment in the state-court action may have a preclusive effect on the instant action as to all defendants, this factor weighs slightly in favor of staying the case.

### 7.     The Vexatious or Reactive Nature of Either Action

BOBV mentions this factor in its motion and reply, arguing that plaintiffs' change in course from its original plan of including the additional claims and defendants in its state-court action to instead filing this action amounts to a vexatious litigation tactic. The court acknowledges that the circumstances surrounding plaintiffs' decision are unclear and possibly questionable; nonetheless, there is no substantive evidence before the court that plaintiffs' decision was made for vexatious purposes. As such, this factor is neutral.

### 8. Impermissible Forum Shopping

The final factor, considered by some courts, relates to impermissible forum shopping. As discussed above, it appears that plaintiffs may have engaged in some form of forum shopping by originally requesting leave to amend their state-court petition to add the federal claim and additional parties, but then later withdrawing those claims and parties and instead bringing this federal suit. Although the court is somewhat uncertain about plaintiffs' motives, "this factor only weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *Int'l Asset Mgmt., Inc. v. Holt*, 487 F. Supp. 2d 1274, 1286 (N.D. Okla. 2007) (quotation and quotation marks omitted).

BOBV points out that plaintiffs changed course and seem to have shopped for a different forum. However, there have been no allegations that plaintiffs did so to avoid adverse state-court rulings or to benefit from application of federal rules. Thus, it has not been shown that any forum shopping in this case was so impermissible as to necessitate a stay or dismissal. *See id*. (finding that lack of allegations of improper purposes cut against finding of impermissible forum shopping). This factor is neutral.

### C. Balancing of the Factors

Three of the factors listed above are neutral. One factor slightly weighs in favor of denying a stay of the federal case. Four factors weigh in favor of staying the case—two weighing in favor, one weighing slightly in favor, and one weighing strongly in favor. After carefully considering each factor, the court finds that the exceptional circumstances in this case warrant a stay of the instant action. The principles underlying the *Colorado River* doctrine—wise judicial administration, conservation of judicial resources, and the comprehensive disposition of litigation—are all supported by a stay of this case.

Although BOBV is the only defendant who requested a stay—and was the only defendant who could have under the *Colorado River* doctrine because it was the only defendant named in both cases—the court finds it necessary under its inherent power to stay the case as to all parties.  "It is beyond cavil that, absent a statute or rule to the contrary, federal district courts possess the inherent power to stay pending litigation when the efficacious management of court dockets reasonably requires such intervention."  *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1154–55 (1st Cir. 1992) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) (other citations omitted)).

It is true that the defendants other than BOBV in this action are not named defendants in the state action; however, these defendants are all named in the "Parties, Jurisdiction and Venue" portion of the petition and the additional federal defendants are mentioned in the factual allegations in both the state and federal cases.  As is stated numerous times above, the same underlying factual issues are present in both cases.  For many of the same reasons that a stay is appropriate as to defendant BOBV, a stay is appropriate as to all defendants.  The risk of inconsistent rulings and inefficient use of the court's time and resources is simply too high should this case proceed against any defendant.  For these reasons, this case is stayed as to all parties pending the outcome of the state-court case.  Should the state-court proceedings fail to resolve all federal claims, a stay allows plaintiffs the opportunity to litigate the remaining claims in federal court without requiring plaintiffs to file a new federal action.  *Fox I*, 16 F.3d at 1083.

**IT IS THEREFORE ORDERED** that defendant Bank of Blue Valley's motion to dismiss or, in the alternative, to stay the present proceedings as against all parties (Doc. 21) is granted in part and denied in part.  Bank of Blue Valley's alternative request to stay the case is granted as to all parties.  This case is stayed as to all parties pending the outcome of the case of *Foxfield Villa Assoc., LLC, v. Bank of Blue Valley*, No. 11CV07558 in the District Court of Johnson County, Kansas.

**IT IS FURTHER ORDERED** that the parties shall file a notice of the state-court judgment with this court within thirty (30) days after it is entered.

Dated this 17th day of January, 2013, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**